Good morning. May it please the Court, I'm Francesca Tamami, Counsel for the Commissioner of Internal Revenue, and I'd like to reserve three minutes of my time for rebuttal, if I may. Okay. This case involves somewhat complex questions of interest, and I'm hoping that I can simplify it for you today. Oh, not as much as we are, believe me. We'll refer to you as Ms. Merlin if you can simplify this. Well, I hope I can perform some magic. I'd like to start by explaining the two types of interest that are at issue in this case in hopefully basic terms. The first- I think I get that. What I'm trying to do is peg that into 6611, 6610, I guess, 6601, 7841, and what the Court here did, the Tax Court did with Baumgartner, I guess it is, and some of the language of the Supreme Court in Proudfoot. Your contention, I guess, is that the Tax Court is not a court of equity, but the Tax Court has said that it has broad equitable powers, hasn't it? Actually, the Tax Court has said the contrary. The Tax Court has not said it has broad equitable powers, and in fact we recited on our reply brief a recent decision of the Tax Court. It was a 2009 case, Pollack v. Commissioner, where, in fact, the Tax Court reiterated that it does not have equitable powers. That was an equitable tolling argument. So in terms of equitable tolling, it may not have had equitable powers. But in a situation like this where the equity arises from whether or not you're going to have the taxpayer running all over the place in order to collect money from the government, that doesn't even seem to be in the media. I guess it is in contention. You do contest whether or not there's interest owing on his overpayment? I think, ultimately, the parties were able to enter a stipulation of facts regarding the overpayment interest claims. I don't know that it's correct to say that the government agreed completely with the taxpayers' overpayment interest claims. Why shouldn't? Go ahead. Well, Mr. Tanami, is one way of at least beginning to talk about this case, that irrespective of what the Tax Court says about its own jurisdiction, they're not an Article III court. We are. So is the District Court and its jurisdiction established by Congress in one of the statutes that's at issue here, and I'm forgetting the section number right now. But is one way of starting out thinking about this case is that the Tax Court's jurisdiction is necessarily limited. It's considerably limited by that which Congress has vested in the Tax Court, and that we've seen what would, speaking only for myself, seem to be practical reasons, reasons of expeditiousness articulated by the Tax Court, and why it's best to resolve this question of overpaid underpayment interest all at one time or all in one place, the Tax Court. Even if that might be more efficient and might, in this particular case, appear to be more fair to the taxpayer, although I would submit that – Is it what the statute says? That's what I'm getting at. Right. And my answer is no. It is not what the statute says. Well, you know, one thing that has confused me about this case, and it may only be a sidelight, but that is Baumgardner. And it has a long lineage now, and it has a long lineage, at least in part, probably a substantial part, because the Commissioner has acquiesced in it. First question, does that matter as far as we're concerned? We can ignore the Tax Court, can't we? Correct. As State of Baumgardner, the Commissioner has acquiesced and accepts that it was correctly decided at this point. But as State of Baumgardner, it addressed a different kind of interest than what the taxpayer is seeking in this case. It did, but it still said that interest is a tax, didn't it? But it was speaking with reference to deficiency interest. And there is a long line of case law going in the Court of Federal Claims primarily, the Court of Claims that is established. Well, and the Internal Revenue Code also treats deficiency interest as part of a tax. The Court of Federal Claims said long ago that deficiency interest is so closely assimilated with a tax, the hide goes with the hair. They can be considered one and the same. There was a recent Federal Circuit case, I think it was 2005, Pacific Gas and Electric, that spoke about one of the issues there was whether the government could recoup excessive overpayment interest paid to a taxpayer by offsetting it against a different tax liability of the taxpayer. The Federal Circuit there said no and discussed the difference between overpayment interest and a tax liability and went into great detail about the components of a tax liability. I'm going to try my simple-minded test. What you're saying is that if a taxpayer wants money back that it's paid, it can go to the tax court. If it wants money from the government that it alleges is owing, it has to go to the Court of Claims or, God forbid, the district court. Correct, correct. Although the tax court's jurisdiction is so limited that a taxpayer cannot freely go just to seek a return of an overpayment, the tax court only has jurisdiction over an overpayment if the commissioner has first issued a notice of deficiency for a particular tax year. So the tax court's jurisdiction is even limited with respect to overpayments. How many taxpayers are actually affected by the circumstance that the Sunoco found itself in? I mean, is this a large-spread phenomenon, or is this just a matter of principally the commissioner saying, I'm not going to let Baumgardner happen again? Well, again, the commissioner doesn't view this case as impinging on Baumgardner because Baumgardner involved a refund of deficiency interest paid by the taxpayer. Right. Not going to let it happen again. Right. We're not going to exceed. Right. No, I don't think that this situation arises very often because most taxpayers, particularly large, corporate, sophisticated taxpayers, understand the procedure that has been in place for over 90 years for seeking overpayment interest from the government, and that is you have six years from the date the IRS schedules the over-assessment to file a claim in the Court of Federal Claims or the district court to recover that interest. It's actually a more generous statute of limitations than what's available for tax refund claims. That system has been in place for at least 90 years. In the Court of Federal Claims and the Federal Circuit, you know, if you ever look at their case law, there's numerous cases. These types of claims are brought all the time, claims for additional overpayment interest. The only reason this case came up is because the taxpayer here let the statute of limitations in the Court of Federal Claims or the district courts run. That six years ran. Then by happenstance, the commissioner happens to issue a notice of deficiency for these particular years, giving the taxpayer a ticket to the tax court. In their petition, Sunoco claimed, well, we disagree with the commissioner. We don't believe we have a deficiency, and, in fact, we believe we have an overpayment. Well, the tax court did have jurisdiction to decide for these tax years before me, does Sunoco, in fact, have a deficiency or an overpayment? Two months later, Sunoco realized we have these claims for additional overpayment interest that we've never brought before. Perhaps we can have these ride off of our overpayment claims. So how is it an overpayment, Ms. Tamami? Isn't there a textual argument here to be made on behalf of the commissioner that by definition this can't be an overpayment? What is that argument? Exactly as you've stated. The Supreme Court, overpayment is not defined in the Internal Revenue Code. The Supreme Court has said that it should be given its usual sense, meaning something that has been overpaid. The taxpayer has paid more than was legally due. So to sustain Sunoco's position, it's your argument, I mean, to sustain Sunoco's position, it would have to be their argument that an amount of money that no one has ever paid here, overpaid underpayment interest, is nevertheless a payment, right? I mean, that seems to be what they're positioning. That's correct. And that's a step of illogic that we believe the tax court took. We don't think overpayment can be extended. I don't know whether it's illogic, but it seems to have some real somatic problems to it that would have to be overcome. Correct.  interest would create an overpayment over which it would have jurisdiction. The logic depends on a number of assumptions, however, that may not hold true, all for the sake of creating this hypothetical overpayment. What the tax court said was assume that the taxpayer has an overpayment of $1,000 that arises in year one. The IRS then credits that $1,000 overpayment to year two and gives $10 of interest with it, but fails to give perhaps the correct amount of interest was $20 and not $10. So that $1,010 is transferred to year two. In the tax court's view, it viewed the taxpayer as having overpaid its year two liability by $10 because that credit should have been larger. However, in this case, because the taxpayer never had that money and hasn't actually used it to pay anything, there is no overpayment. Don't you also have an argument to make based upon other provisions of the code that make principled distinctions between tax, interest, and penalties? And if I'm right about that, what are those other statutory provisions? Well, in the case of deficiency interest, for example, there's 6601E says that for all purposes it's generally treated as part of the tax, although not for deficiency procedures. That exception is not really relevant here. I think in the case of overpayment interest, it's that there's a complete absence of a provision that would treat overpayment interest as part of a tax. So Congress could have enacted a kind of corollary or similar statute to 6601E, is it? Correct. But they haven't done so. Correct. And I would also point out that there's an express jurisdictional prohibition in 6512B4. It says the tax court shall have no jurisdiction to restrain or review any credit made by the Secretary under Section 6402. The tax court in this case acknowledged that most of the overpayments at issue, in fact all of the overpayments at issue for two of the years in this case, were applied by the IRS as credits pursuant to Section 6402. 6512B4 flatly prohibits the tax court from reviewing those credits. That's the language of the statute. Go back to first principles. You say in your brief that it is well established that a claim for overpayment is a general monetary claim against the United States and not a tax refund claim. Where do I look to find this well established principle? I think the best cases are the Alexander Proudfoot case cited in our opening brief. The Pacific Gas and Electric case by the Federal Circuit, that was a 2005 case, also discusses it. Take a look. You're saying generally historically that the payment of interest is so tied, you used the phrase hide from the hair earlier, is so tied to the concept of the tax that it has historically been viewed as part of the tax and jurisdictionally that makes sense and that was the difference with Baumgartner that the tax court missed here. Correct. Correct. And there is no analogous provision in any statute and there's no case that has extended that principle to overpayment interest. Even though these are both two types of interest, they are fundamentally different. I just wanted to point out in response to Judge Stern's questions, this is also discussed in the Marsh and McClellan case in the Federal Circuit. I think that's also cited in our opening brief. I think you reserved some time. I'd like to reserve the rest of my time. Thank you. Why don't we just take a brief five-minute recess before we hear from Alpha League. May it please the Court. I am Stephen Hamilton, appearing for Sunoco, Inc. and subsidiaries. Hamilton, you're not referring to the Venerable Mr. Putnam to argue this case? I'm shocked. Well, he has been assisting me on this case, Your Honor. Okay. Very, very well. Okay. I arrived at the courthouse a little early this morning and so I had time to walk through the library and on the first floor. Is it still there? It's still there. I haven't been there in so long. And then when you walk through the library, you come to this enormous Louise Nevelson sculpture, which is entitled Bicentennial Dawn, which is something that she created in 1975. And it's huge and it's complicated and I think it's beautiful. Please don't tell me that you think that this coat is beautiful. This case is almost as old. This case is almost as old as that sculpture. Okay. That case was from the 1970s. And this case is certainly huge and complicated. I hope that you were not talking aesthetically. I see now you're talking temporally. Well, that is my point, Your Honor. This case is huge and it's complicated, but it most definitely is not beautiful. Okay. We agree. And I would say neither is the Internal Revenue Code. Okay. Fortunately, at this point, there is just one issue in the case, which is whether the tax court has jurisdiction over overpayment interest. The parties have stipulated everything else. And Paragraph 17 of their stipulation says, the party's computation of interest will be binding on the parties unless respondent appeals to jurisdictional issue and it is finally determined that the tax court does not have jurisdiction over the termination of underpaid interest on overpayments. So there are two statutory sources of tax court jurisdiction to determine overpayment interest. Internal Revenue Code sections 6512B1 and 7481C. The tax court held in this case that 6512B1 provides it with jurisdiction over the subject here. But one point not to lose sight of is that because the parties have stipulated to the computation of interest and provided that that will be binding on the parties unless it is ultimately determined that the tax court does not have jurisdiction over these interest issues. This Court should affirm if you conclude that the tax court was correct, that section 6512B1 provides jurisdiction, or if you conclude that section 7481C provides the tax court jurisdiction to resolve these matters. Sotomayor, I believe it's 6512B1. And help me understand how you get jurisdiction out of it. Yes, Your Honor. And Judge Smith raised the question, you know, how do you get an overpayment here where interest obviously, you're talking about interest on overpayment, the taxpayer obviously never physically paid interest. Is that a fair question? It's an absolutely fair question, Your Honor. And the point is that there are a lot of instances in which overpayment means something other than something the taxpayer has paid to the government. For example, the earned income tax credit is a credit that a lot of low-income taxpayers get the benefit of when they file their tax return. The earned income credit creates an overpayment. Even though the taxpayer has not paid anything to the government, the right of the taxpayer to that refund is deemed, is termed an overpayment. And indeed, Judge Stearns in a 2006 opinion in Bowcage v. United States made exactly that point. And that's the term overpayment is used frequently to describe things that were not actually paid to the government. Is it possible that despite his distinguished stature, he was wrong? No, I think that the term is very much used that way. If you look at Pacific Gas – Well, help me with Proudfoot then. If there's one thing that struck me that Ms. Tamami said, which might boil this all down and make it very, very simple, is that interest paid has historically been considered as part of the tax. That is not true when you get to interest paid out of deficiency. That is not true when you get to a situation where you're looking for interest back from the government on an overpayment. Those are two very, very different things. As apples and oranges, Congress gave jurisdiction for apples in the first case, but it didn't provide the jurisdiction for the latter case. And why isn't it just that simple? Well, Your Honor, I don't think it is that simple. If you look at 6512b1 itself, that was enacted in the Revenue Act of 1926. And looking just at the language of that section, the taxpayer has made an overpayment of interest. The tax court has jurisdiction to determine the amount of such overpayment. Then it was the Board of Tax Appeals. There are many, many cases, instances where courts have jurisdiction over subject matters, and they have jurisdiction to decide interest related to the subject matter. It's a sort of a bizarre idea that you would have in courts. We say courts, though, but you're talking about court of claims, tax court? The tax court is an Article I court. It has many, many of the features of a court. It has a lot of equitable powers. The idea that you would bifurcate. I'm trying to break this up. I started out with my discussion with Ms. Tamami about the equitable nature of the court, and she cited Pollack. But hasn't the Supreme Court even said that it is not a court of equity, that the tax court is not a court of equity? It is not a court of equity. And its jurisdiction is set by Congress, and its jurisdiction is over tax-related matters. But that doesn't mean that its jurisdiction has to be interpreted in a way that gives you crazy results. I mean, we could ---- Well, crazy results sounds like a search for what seems to be a fair or equitable or reasonable result. But why should we not start with and be limited by what the text of the jurisdictional statute say? And beyond that, hasn't Congress said frequently within the code what is meant by taxes, what is meant by interest, what is meant by penalties? And shouldn't we honor those distinctions? Well, the Internal Revenue Code has been evolved over almost 100 years. And it really, you can't interpret one provision that was enacted in 1926 by reference to another provision that was enacted 40 years later. Isn't that exactly what you're doing when you talk about the earned income tax credit? Isn't that exactly the kind of argument you're making? I'm making the argument that the term overpayment has frequently been used to deal with things that are not actually physically paid to the government. And on that point, Pacific Gas, which the commissioner relies on, says that the remedy for overpayment interest is under 7805. The remedy for an erroneous overpayment of interest is under 7805. When you look at 7805, what it says is that the government has the right to recover an erroneous overpayment of tax. It doesn't even mention the word interest in that context. And that was talking about an overpayment. They do talk about interest. They say that the tax deficiency, tax penalty, and deficiency interest are all components of a taxpayer's liability. Again, they're talking about an overpayment of deficiency interest. They're talking about a different kind of. Well, no, Pacific Gas was saying that the remedy for the government in seeking to recover an erroneous overpayment of interest is 7805. 7805 does not refer to overpaid interest. 1383 of the opinion where they lumped together interest in terms of going as Mr. Kamami's expression, hiding here with the tax liability. It's different than getting something back from the government that you've never paid to the government except for the kind of analogy that the tax court engaged in to come up with a hypothetical to define what is payment, i.e., the deprivation of the use of money, which I guess you could argue is a form of payment. But if we're talking about a jurisdictional statute, don't we have to be more confined to the text than that? Otherwise, we have a situation where an Article III court could be enlarging the jurisdiction of an Article I court way beyond what Congress ever intended, at least as intended as by the text of the jurisdictional statutes. Well, I take the point, Your Honor. But, again, the statutory language is not much different from the language of 28 U.S.C. 1346, which is the jurisdiction of the district courts, which says that the district courts have the right to deal with any sum alleged to have been excessive. Well, an overpayment of interest is not excessive. Quite the contrary. Or any manner wrongfully collected on the Internal Revenue Code. Well, again, overpayment of interest is not collected. But the courts have held that that gives the district courts jurisdiction over overpayment of interest. Again, I take the point that it has not been paid, but there are, again, a number of instances where overpayment has been interpreted broadly enough to include interest. Well, this is not a right, though, searching for a remedy. There is, and Tamimi would tell you that there is a remedy. She just thinks it ought to be in two places. Right. No, she thinks there should be 12 lawsuits about the year 1981. Because there were. You want one-stop shopping. There were 12 different instances of refunds or credits in the course of the time in which the parties had extended the statute of limitations with a tolling agreement. There were 12 different instances where there was, where she claims the taxpayer should have rushed into claims court to pursue a claim. So she would have Sunoco bringing 13 lawsuits about 1981. I don't think that's practical, and I don't think it's required. Let me talk about 7481C for a moment, because there I think Judge Smith will agree that the statutory language is very clearly supports our position. That was enacted in 1988, and it was amended in 1997 to clarify that the tax court's jurisdiction to redetermine the amount of interest does not depend on whether the interest is underpayment interest or overpayment interest. And if you look at the language of 7481C. There's a very specific condition preceding as to when 7481C applies. Yes. Paragraph 1 says you can file a motion if you're covered by cases to which it applies. Cases to which it applies are cases where an assessment has been made that includes interest and the taxpayer has paid the amount of the deficiency, and then it also applies if the tax court finds under 6512B that the taxpayer has made an overpayment. What do you do with the word reopen in 7481C? The tax court may reopen. Well, that's procedural, Your Honor. That's procedural. In other words, the tax court, even though it has entered a final judgment, has the ability to entertain a motion to continue the case to deal with interest. Isn't that the problem? It separates out why 7481C wouldn't be applicable here? No. My point, Your Honor, is that 7481C would be applicable and does create jurisdiction to decide exactly these interest issues. And given that the parties have stipulated to the interest on it and that stipulation is binding unless the tax court does not have jurisdiction, the jurisdiction of 7481C is enough to affirm. Okay. I understand that's a point, but I'm trying to fit that point into what I'm looking at in the language of 7481C. Well, that's a procedure. In other words, the timing of a 7481C motion is definitely after the final judgment. We don't dispute that. We're just saying you don't have to send it back to go through the motions of making a motion to have the stipulation enforced. Judge McKee is asking where in the text you find it. And I think what you're really looking at is the disjunctive or the Secretary has made an underpayment of such interest. Well, that's the language that we're focusing on is A or B. I mean, basically both of those circumstances are present in these different years. I mean, B, the tax court finds the taxpayer has made an overpayment. That's present. Now, one thing about this language is that the word and between A and B is actually being used in the disjunctive sense. In other words, if either A or B is the case, you can have a motion. Because, in fact, it wouldn't make any sense to interpret it the other way. And Judge Smith has discussed the whole question of disjunctive versus conjunctive ands in a case that I really discussed at length in Reese Brothers v. United States, 2006 opinion. And in that case, the government argued disjunctive. The court held conjunctive. But both agreed that and is sometimes used in either sense. Here, if you look at the way it's used here, the clause B that was added, the tax court finds under Section 6512B that the taxpayer has made an overpayment, that was added when they amended the statute in 1997 to expand the scope to cover overpayment interest. And it clearly cannot have been intended to be an additional condition, an additional requirement before you make a motion. It was really an alternative to the two. So I just ---- Ms. Tamami did not bring this up during her argument. I can't recall whether it's a point made in the Commissioner's brief or not. But do you have a copy of Baumgardner at hand? Yes, Your Honor. There appears at pages 452 to 453 of that opinion a passage that caught my interest, and in particular a sentence in that passage. And it is that the tax court says that because our jurisdiction is not derived from Title 28 of the United States Code, we remain unable to enter a decision for interest upon an overpayment. What do you make of that? Well, one thing I make of it, Your Honor, is that it was a statement that was made before 7481C existed. How does that matter? Because 7481C unequivocally gives the tax court the power to enter a decision for interest upon an overpayment. 7481C was enacted for that very purpose, and indeed it makes that statement in Baumgarten out of date. I think that's really the main argument about that. Times have changed. Thank you. Another point I'd like to highlight, statute of limitations is not at issue in this appeal. The counsel of the government claimed that we, that Sunoco. I think she was attempting to paint the background of how we got here. Excuse me? I think she was attempting to paint the background of how we got here. Oh, okay. Because it's stipulated that jurisdiction is the only issue. And we don't think there would have been a valid statute of limitations objection anyway because the parties entered into a tolling agreement on the IRS Form 872A. It's the IRS's form, and that's designed to keep the year open both for deficiencies and for refunds until the whole audit process and the appeals process is completed. And there's no reason that shouldn't be construed to keep open all the relevant statutes of limitations. And it's a very, very common situation where you have a corporate audit that goes on for many years and the statute is extended. The IRS lives at Sunoco and audit them around the clock, and this is sort of the standard procedure. You keep everything open. Everything is resolved at the end, and it really makes no sense to have a lot of different requirements of different cases being litigated when you can do it all at once in the tax court, and the tax court does have jurisdictions. Now, the last thing I'd like to address 6512B4, the government argues that that precludes the tax court from restraining or reviewing a credit or reduction and, therefore, somehow prevents it from deciding this interest question. And as we discussed in our brief, 6512B4 was designed to preclude the tax court from taking jurisdiction over the merits of offsets that the IRS might make against tax overpayments, such as student loans, child support, debts owed to the government. That's not what we're talking about here at all. All we're talking about here is the timing of these different amounts. They're not in dispute, any of these offsets. So 6512B4 really does not affect the case. Thank you very much. Mr. Malmey, did we reserve some time, I believe? I'd just like to make three points that hopefully I can squeeze in here. First of all, with respect to 7481C, I just first of all want to point out that if you look at Joint Appendix page 195, in the proceedings below, Sunoco, in its opposition to the Commissioner's motion to dismiss, argued that 7481C here is not directly relevant. It did not rely on that statute for jurisdiction here, and indeed the tax court did not find that 7481C was a basis for its jurisdiction. Also, if you just look at the language of 7481C, it does not apply on its face. 7481C relates to when the tax court has acquired jurisdiction over a particular tax year, finds in the course of the proceedings that there is an overpayment, enters a decision regarding that overpayment, and then the IRS either fails to refund the overpayment or fails to give the proper amount of interest, the taxpayer can come back to the tax court within one year, file a motion to reopen the case, the tax court has the power to recompute the overpayment interest on the overpayment that was determined by the tax court. In this case, we are dealing with overpayments that relate to issues that were settled before the tax court proceeding even began. So the principal amount of the overpayments was not at issue in this tax court case, and in fact that's why Sunoco was able to raise these claims in an amended petition, because 7481C speaks to a situation where your claim isn't even ripe until after the decision is entered and the IRS makes some type of mistake with respect to the interest. So 7481C, in addition to not having been relied upon as a basis for jurisdiction either by the tax court or by your adversary, simply is beside the point here. Correct. Correct. My opposing counsel made a point about there are tax items that are not necessarily paid that are nevertheless treated as overpayments, and he mentioned specifically the earned income credit. I don't recall that being raised in their brief, so I haven't specifically looked up the rules regarding earned income credits, but my response is just that if the code itself, the Internal Revenue Code, actually treats something as an overpayment and says it shall be treated as an overpayment of tax, there you have it. There is no such provision for overpayment interest. And my third point, I just wanted to respond more fully to Judge McKee's point about whether the tax court has equitable powers in construing its jurisdiction, and I just wanted to direct your attention to a couple more cases. One is the green, the petty case cited on page 61 of our brief. That's a case where the tax court had jurisdiction over a specific type of collection due process claim and refused to find that it had jurisdiction to determine an overpayment in the context of that collection due process proceeding because Congress had not specifically given it that power. The court really went through the opinion, really traces the tax court's history in terms of overpayment jurisdiction, and I think the discussion in that case is relevant in this context. Also, the Ewing case in the Ninth Circuit, and that was cited in our reply brief. The Ninth Circuit opinion doesn't get into it as much, but in that case the tax court exercised jurisdiction over a claim for equitable innocent spouse relief. The government argued the code section 6015 does not give jurisdiction. The tax court went to pains to find that it had jurisdiction based on the legislative history, Congress's equitable intents for these particular taxpayers. The Ninth Circuit reversed because the plain language did not support the exercise of jurisdiction. If the court has no further questions, I'm through. Thank you. I thank both counsel for very helpful presentations in a really difficult case. As Mr. Hamilton so graciously conceded, it's not exactly a thing of beauty to behold. Thank you very much. Take the matter into advisement.